MICHAEL KOLESNIK, PROSECUTOR, v. IRVINGTON VARNISH AND INSULATOR CO., DEFENDANT.

Argued October 7, 1937—Decided March 15, 1938.

Before Justices BODINE, HEHER and PERSKIE.

For the prosecutor, *David Roskein* (*John A. Laird,* of counsel).

For the defendant, *Kellogg & Chance* (*R. Robinson Chance,* of counsel).

The opinion of the court was delivered by

HEHER, J. This case arose under the Workmen's Compensation act of 1911. *Pamph. L., pp.* 134, 763, as amended.

On July 24th, 1933, prosecutor suffered injury by accident arising out of and in the course of his employment with defendant; and on June 11th, 1936, a "determination and rule for judgment" was entered in the compensation bureau, whereby he was awarded compensation on the basis of five per cent. of total permanent disability.

The petition averred the consequent permanent injuries thus: "Back, leg, hip sacro iliac sprain, injury to sciatic nerve, nerve impairment and other complications." The answer made what might well be termed a guarded admission of permanent incapacity; and, when the matter came on for hearing, the referee was informed that a settlement had been negotiated, providing, among other things, for compensation on the basis of five per cent. of total permanent disability. This "settlement" was termed by defendant a "final close-out," barring recovery for disability to arise thereafter; and, when prosecutor himself refused consent to this proposed adjustment of the controversy, the referee proceeded to an immediate hearing with the witnesses on hand.

He found a traumatic aggravation of "a generalized arthritis due to focal infection;" and he incorporated in the judgment—entirely without warrant in law, as will presently appear—a finding that, while prosecutor's "condition will most likely be progressive in character, * * * the progressiveness will not be due to trauma," and a provision designed to impart to the adjudication the quality of "a final award disposing of the case for all time as far as the trauma alleged * * * is concerned."

On December 7th, 1935, the instant petition was filed.

While not in terms one for increased disability, it was so considered; and Deputy Commissioner Stahl, sitting in the case for the first time, found progressive traumatic sciatica, accompanied by "considerable atrophy in the left thigh," consequent upon the original injury, and a subsequent twenty per cent. increase of permanent incapacity. Judgment was entered accordingly; and, on defendant's appeal, the Essex Common Pleas reversed on the ground that prosecutor had not sustained the burden of proof of "an increase in incapacity subsequent to the first award."

It is the insistence of the employer, *in limine,* that the judgment entered on the second petition is *coram non judice,* in that (1) the petition is not in terms one for increased incapacity under paragraph 21 (f), section II, of the Workmen's Compensation act, as amended by chapter 279 of the laws of 1931 (*Pamph. L., p.* 704), and the award therefore constitutes a deprivation of property without due process of law, in contravention of the fourteenth amendment of the federal constitution, and (2) the judgment on the original petition was in substance and effect "a final closeout"—conclusive of the extent of the disability, then existent and to arise in *futuro.*

Neither point has substance.

*First:* The second petition was entertained as one for increased incapacity only, and was so regarded by the parties. The answer did not raise the question. Nor was it made the subject of an appropriate motion at the hearing. Defendant moved at the close of the case for a dismissal of the petition on the sole ground that the judgment on the original petition constituted "a final disposition of the matter"—inclusive of compensation for subsequent disability—under the rule laid down in *Boyko* v. *Federated Metals Co.,* 11 *N. J. Mis. R.* 807; *affirmed,* 112 *N. J. L.* 87; and the deputy commissioner ruled, and rightly so as will presently be shown, that, in so far as the original judgment barred the right of recovery of compensation for a subsequent increase of incapacity granted by paragraph 21 (f) of the statute, *supra,* it was an excess of power. Even then, the point now urged was not

made. Defendant's attorney persisted in his contention that there had been a "final closeout * * * binding on all the parties," within the doctrine of the cited case, and asked the commissioner to note "an exception on the record" based thereon.

Thus it is that, with the consent of defendant, the petition was treated as in substance one for compensation for increased disability; and defendant is therefore estopped from urging the point now as a ground for reversal.

*Second:* The provision of the original judgment barring recovery for an after-occurring increase of disability is plainly an excess of jurisdiction. That was patently an attempt to circumvent the basic policy of the statute. There was in no sense a "closeout" by mutual agreement, for the injured employe himself refused consent. Moreover, the parties are disabled from contracting out of the statute. The referee was utterly without power to deprive the employe of the substantial right to compensation for increased incapacity conferred by paragraph 21 (f), *supra.* It was plainly not his province to set at naught this provision of the statute. *Tucker* v. *Frank J. Beltramo, Inc.,* 117 *N. J. L.* 72; *P. Bronstein & Co., Inc.,* v. *Hoffman,* 117 *Id.* 500; *Streng's Piece Dye Works, Inc.,* v. *Galasso,* 118 *Id.* 257; *J. W. Ferguson Co.* v. *Seaman,* 119 *Id.* 575; *Radzikowski* v. *Public Service Co-ordinated Transport,* 15 *N. J. Mis. R.* 253.

*Third:* And we find that prosecutor has sustained the burden of proof as respects the claimed subsequent increase of incapacity within the intendment of the statute.

At the time of the happening of the accident, he was fifty-one years of age. While then a victim of arthritis, it was in no sense disabling. For five or six years prior thereto, he was able to perform the duties of his employment with defendant without interruption or apparent discomfort, while he has since been continuously incapacitated. He concededly suffered injury while attempting, in an emergency, to roll from a machine five hundred pounds of paper which had accidentally become ignited; and this sudden and unusual effort to protect his employer's property unquestionably subjected him

to great strain.  His injury compelled an immediate cessation of work.

At the hearing in the bureau, a medical witness called by prosecutor, Dr. Trainor (he died before the hearing on the second petition), testified that his then disability was approximately fifteen per cent. of total, and that an award based on five per cent. of total incapacity due to trauma would be "fair as a final disposition" of the claim.  Dr. Ruoff, defendant's physician, also holding the view that prosecutor's disability was fifteen per cent. of total, expressed the opinion that there "was no actual disability as the result of trauma," and therefore an allowance based on five per cent. of total incapacity would be entirely fair to him.  The referee then judicially determined that that was the full extent of his then incapacity due to trauma.  As to the effect of this finding, see *Tucker* v. *Frank J. Beltramo, Inc., supra.*

The prosecutor thereafter indisputably suffered traumatic sciatica and kindred ailments, accompanied by further atrophy of the left thigh, with a resultant substantial increase of disability.  Concededly, the incapacity has increased to fifty per cent. of total; and the essential point in controversy is whether any part of the increase is reasonably attributable to the trauma.  The medical testimony leads irresistibly to the conclusion that the disabling condition is in large part the result of a traumatic aggravation of a dormant arthritic condition—arthritis rendered active by the traumatism.  The circumference of the left thigh has decreased one inch since the rendition of the judgment on the first petition, and a lateral curvature of the spine to the left has also developed. Considering prosecutor's apparent good health and his unimpaired capacity for work prior to the accident, in the light of the subsequent developments, it is inconceivable that the trauma was not a causative agent of the enlarged disability.

The deputy commissioner, in a careful analysis of the evidence, points out that his examination of prosecutor's body had enabled him to resolve the sharp conflicts in the medical testimony; and we are not unmindful of the great advantage, in the appraisal of the evidence, of personal observation of

the witnesses. Viewing the evidence as a whole, we find that he has gauged with a fair degree of accuracy the extent of prosecutor's disability consequent upon the injuries so suffered. The proofs provide a substantial basis for the admeasurement of the after-occurring disability; and in the determination of that issue the commissioner was governed by the correct principles. See *Tucker* v. *Frank J. Beltramo, Inc., supra.*

The judgment of the Court of Common Pleas is accordingly reversed, and the judgment of the bureau is affirmed, with costs.