195 So. 743

**AGRICOLA FURNACE CO. v. SMITH.**

**7 Div. 585.**

Supreme Court of Alabama.

March 28, 1940.

Rehearing Denied May 9, 1940.

McCord & Miller and E. O. McCord, all of Gadsden for appellee and cross-appellant.

London & Yancey and Fred G. Koenig, Sr., all of Birmingham, for appellant.

GARDNER, Justice.

The Agricola Furnace Company petitioned for a writ of certiorari to review the judgment of the trial court in awarding compensation to T. C. Smith, its employee, who was injured while working in the line and scope of his employment. For convenience, we shall hereafter refer to petitioner as appellant and the employee as appellee.

Omitting intervening details, which may be considered immaterial to the decision here, the Agricola Furnace Company first submits on its motion to dismiss its cause and vacate the writ, objected to by appellee upon the ground that it was prejudicial to his interest, as he has entered cross-assignments of error, which he desired to have considered. So far as concerns appeals, it is of course the generally accepted rule that the dismissal of an appeal by the appellant does not carry the case so far as it is affected by an assignment of cross-errors. 4 Corpus Juris Secundum, Appeal and Error, page 1824, § 1309; Feder v. Field, 117 Ind. 386, 20 N.E. 129.

Appellant insists that rule is inapplicable here as the cause is brought for review by common-law writ of certiorari,

and not by appeal, citing Woodward Iron Co. v. Bradford, 206 Ala. 447, 90 So. 803.

Though the review here is limited, yet bill of exceptions is allowed for a limited purpose, and the authorities generally recognize a similarity of procedure between a review in such cases and causes on direct appeal. 71 Corpus Juris 1276, et seq; 11 Corpus Juris 193, 194. And in Ex parte Sloss-Sheffield Steel & Iron Co., 207 Ala. 219, 92 So. 458, 460, it was observed that, as the statute provided the aggrieved party may "by certiorari * * appeal to the Supreme Court," it appeared "to hold the scales evenly between certiorari and appeal." That authority was the first establishing the rule for a bill of exceptions for a limited purpose, which has been consistently followed. Ex parte Woodward Iron Co., 211 Ala. 74, 99 So. 97; Ex parte DeBardeleben Coal Co., 212 Ala. 533, 103 So. 548; Morgan-Hill Paving Co. v. Stewart, 220 Ala. 480, 126 So. 116.

While we recognize that appeal and certiorari are not identical (Ex parte Woodward Iron Co., 211 Ala. 74, 99 So. 97), yet the statute itself by its language indicates a legislative intent that the method of review be considered in the nature of a limited appeal. Section 6091, Code of 1923, was placed in the Code in its present form after the adoption of the Workmen's Compensation Act, Code 1923, § 7534 et seq., and cross-assignments of error are permitted thereunder without appellant's consent. Nelson v. Boe, 226 Ala. 582, 148 So. 311.

True, the above section specifies only appeal and writ of error, but it gives definite recognition to the principle of cross assignments of error. The similarity existing between a writ of error and certiorari should be kept in mind in this connection. This is noted in the following from the text of 4 Corpus Juris Secundum, Appeal and Error, page 69, § 9.: "While writ of error and certiorari are distinguishable and a writ of certiorari cannot ordinarily be made to serve the purposes of a writ of error, they are somewhat similar in a number of aspects, certiorari being regarded as in the nature of a writ of error when not ancillary to other process, and as a writ of error within the meaning of some statutes."

Clearly, no sound reason exists for permitting cross-errors in writs of error and denying them in an appeal "by certiorari" as in this class of cases; and we are persuaded that permitting such cross assignment carries out the legislative intent. And this is in harmony with the purpose of the workmen's compensation statute, which looks to a prompt disposition of controversies arising thereunder, and with as little formality as is consistent with its administration. The authorities indicate that in those states where cross-assignments of error are recognized, they are equally applicable, without specific reference, to reviews in compensation cases. Thus the appellate court is enabled to finally adjudicate upon the whole controversy, without multiplication of records, with consequent increase of cost.

The right of appellee to cross-assign error in cases of this character appears to have been recognized and not questioned in Alabama By-Products Co. v. Winters, 234 Ala. 566, 176 So. 183. We therefore conclude appellee had the right to cross-assign errors, and that the motion to dismiss the appeal and quash the writ is due to be denied. This conclusion brings us to a consideration of the merits of the cause.

There is no bill of exceptions, the finding of facts by the trial judge eliminating any necessity therefor as it is full and complete.

That plaintiff suffered an injury for which liability attached is clear enough. Plaintiff, on March 10, 1937, was standing on a scaffold and in a fall therefrom suffered a fracture of the heel bone of each foot. On August 23, 1937, plaintiff returned to work and has so continued as a welder for defendant, receiving the same compensation which he received prior to the injury.

Our statute (General Acts, Extra Session 1936, page 10, amending Code, § 7551,) provides: "For permanent partial disability the compensation shall be based upon the extent of such disability." Then follows a schedule, containing, among other things, a provision for fifty-five per cent. of the average weekly earnings for the loss of two feet, four hundred weeks.

Appellee did not suffer the loss of two feet, but a permanent injury to both, which the trial judge found was equal to a forty per cent. partial disability.

Our statute further provides: "In case of permanent disability, due to injury to

a member resulting in less than total loss of use of such member, not otherwise compensated in this schedule, compensation shall be paid at the prescribed rate during that part of the time specified in the schedule for the total loss or total loss of use of the respective member, which the extent of the injury to the member bears to its total loss."

Thus it appears our statute provides a definite schedule for the loss of a named member, and an equally definite schedule for a permanent disability to such member which is less than the total loss of such member or a total loss of its use. ·

■ The case therefore comes within the last-quoted clause of our statute, and the trial court correctly so determined. But in awarding compensation there was deducted the number of weeks in which the employee worked for the employer and earned his regular wages. In this there was error.

■ In 71 Corpus Juris 865 is the following: "Payments made to the employee as wages for his services after the injury cannot be deducted from the award." And the authorities cited in the note support the text. See, also, 119 A.L.R. 923-925; 1 Honnold on Workmen's Compensation law, section 155; 2 Schneider Workmen's Compensation Law, section 427; DeZeng Standard Co. v. Pressey, 86 N.J.L. 469, 92 A. 278; Gailey v. Peet Bros. M'f'g. Co., 98 Kan. 53, 157. P. 431; Burbage v. Lee, 87 N.J.L. 36, 93 A. 859; Smythe v. Western Star Milling Co., 136 Kan. 416, 15 P.2d 419; Fulmer v. McDade, La.App., 142 So. 733.

In DeZeng Standard Co. v. Pressey, supra, the New Jersey court observed [86 N.J.L. 469, 92 A. 279]:

"The prosecutor's principal claim is that there cannot be a statutory 'disability' when it appears that the earnings of the petitioner had not been impaired. With this we cannot agree. It may well be that for a time an injured ·employé might be able to earn the same wages as before the accident; but, as we read the act, the disability intended thereby is a disability due to loss of a member, or part of a member, or of a function, rather than to mere loss of earning power. Even if this were not so, it does not follow that the injured employé had not sustained a distinct loss of earning power in the near

or not remote future and for which the award is intended to compensate. * * *

"Next it is argued that, because the petitioner worked for the prosecutor for 55 weeks at full wages, these 55 weeks should be deducted from the 60 weeks for which the award was made. The answer is that the prosecutor was under no obligation to employ the petitioner at $20 a week or any other sum, and that inasmuch as he chose to do so without any understanding, express or implied, that petitioner was not worth those wages, or that part of them should be treated as moneys paid under the compensation act, he must be presumed to have paid the money as wages and because he thought the petitioner was worth that amount."

And, following like reasoning, the Louisiana court in Fulmer v. McDade, supra, observed [142 So. 736]: "Where the impairment is only partial, it is assumed that the employee has· some earning capacity left, so, whenever he is able to resume his labor, whatever is thereafter paid him for such labor is not properly deductible from the amount of compensation due him for the permanent partial loss of the use of function of the injured member."

And in Smythe v. Western Star Milling Co., supra, the Kansas court said [136 Kan. 416, 15 P.2d 420]: "That money was paid for services, not for compensation. The amount of compensation fixed by statute for scheduled injuries is not to be reduced by earnings of the workman subsequent to the injury."

As we have previously observed, this case is governed by a definite schedule of compensation, and we find no provision in the statute for a deduction therefrom of wages earned.

In the method of compensation the trial court followed the mode approved in Galloway Coal Co. v. Stanford, 215 Ala. 79, 109 So. 377; Doullut v. Seabury, 217 Ala. 285, 116 So. 134, and Ex parte Jefferson Slag Co., 209 Ala. 263, 96 So. 138. But those cases were not dealing with the question here presented, and, therefore, are inapplicable thereto.

Properly interpreted, it would seem the holding in the case of Ex parte American Blakeslee M'f'g. Co., 19 Ala.App. 547, 98 So. 817, was in essence to the effect that in· fact no disability was there shown.

Of course the fact the employee resumed his work may be considered for its evidentiary value in determining the percentage of disability, but the mere fact such work is resumed for a given time and at the same wage does not disentitle him to compensation, and these weeks are not due to be deducted.

But appellant argues that the provision in section 7551, Code (General Acts 1936 [Extra Session], page 12, § 2) to the effect that the employee is not entitled to compensation if he refuses suitable employment during the continuance of such refusal, unless the circuit judge finds the refusal justifiable, discloses a legislative intent that the period for which he works is to be deducted from the period of compensation.

We are persuaded this provision is inapplicable to cases involving permanent partial disability enumerated in the schedule. In cases of partial permanent disability, not so enumerated, perhaps there is reason to consider earnings subsequent to the injury, and this would be especially applicable where compensation is based upon average weekly earnings as compared with average weekly earnings the employee is subsequently able to earn in his partially disabled condition, which are given reference in the very same paragraph in which is found the above-noted provision. But the instant case comes within the enumerated scheduled class, and, as said in Inman v. Carl Furst Co., 92 Ind.App. 17, 174 N.E. 96, 98, "it is given by the law without qualification or restriction."

Our statute and that of Tennessee in this particular appear to be identical, as found set out in Casteel v. Aluminium Co., 161 Tenn. 407, 408, 33 S.W.2d 61, 62, cited in 71 Corpus Juris 1444. The Tennessee court observed that the reason for this provision as to refusal of employment was obvious in those cases of permanent partial disability not scheduled, but, as to those enumerated in the schedule, the reason was not so clear, but concluded the discussion with the statement: "At any rate, we do not see that such language could qualify the definite provision that scheduled compensation should be paid for scheduled injuries." The Casteel case, supra, is here directly in point, and we consider the conclusion reached is sound and in harmony with the principles of liberal construction obtaining as to such statutes.

It results the judgment is due to be reversed on appellee's cross assignments of error, and the cause remanded to the court below for a new trial. Appellant is taxed with the cost of this appeal.

Motion denied.

Reversed and remanded on cross-assignments of error.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.

On Rehearing.

PER CURIAM.

Application for rehearing overruled.

GARDNER, C. J., and THOMAS, BOULDIN, and FOSTER, JJ., concur.