NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

MARIANO RIBOLETTI, PETITIONER, v. UNITED ENGINEERS AND CONSTRUCTORS, INC., RESPONDENT.

Decided April 2, 1940.

For the petitioner, *David Roskein* (by *Sol J. Cohen*).

For the respondent, *Henry H. Fryling* (by *William F. Vosseller*).

* * * * * * *

This matter was originally heard on November 15th, 1939, at which time an adjudication of the issues was rendered. Subsequent thereto there were applications made seeking a modification of the adjudication and leave was requested to

permit an exhibition of moving pictures taken some time subsequent to the original hearing. This court, in pursuance of its policy to extend its broadest latitude to the protection of both petitioners and respondents, granted leave to the respondent to bring in any additional proof it deemed necessary for the protection of its interests. At the time of the original hearing there was adduced on behalf of the petitioner, in addition to his testimony, that of Mike Iuzzoleneo, Joe Cerami and the petitioner's wife, Josephine Riboletti, as lay witnesses, and the following medical experts: Dr. C. C. Beling, Dr. Samuel B. Greenwood and Dr. Max Kummel. On behalf of the respondent there was adduced the testimony of Dr. Albert Scott Harden, Dr. J. Irving Fort, Dr. Herbert Taylor, Dr. E. Rissman and Dr. Lewis Loeser.

From the testimony adduced and the stipulations of counsel, I find that on February 25th, 1935, the petitioner was in the employ of the respondent as a general laborer and on that day, while in the act of lifting a plank on which were placed scaffolds, in order to permit a fellow worker to pull out another plank underneath same, petitioner felt a sharp pain in his lower back; he reported this incident to his foreman immediately and thereafter continued to finish out his day's work. This accident took place about three-thirty P. M.; his regular quitting time was at four-thirty P. M. The petitioner testified that on the same evening the pain in his back was so severe that he could not sleep throughout the night. Upon returning to work the following morning he again complained to the foreman of his severe pain. The petitioner was sent to the respondent's dispensary where treatment to his back was instituted and continued for a period of approximately nineteen and three-sevenths weeks, during which time the petitioner was paid compensation for temporary disability at the rate of $20 per week.

The testimony is undisputed and there is not one scintilla of evidence offered by the respondent to contradict the fact that the petitioner, prior to the accident, was apparently in good health; that he had worked for the respondent as a laborer for a period of approximately twenty years, which work consisted of general labor work, including concrete

work, breaking up concrete and carrying bags of cement in large numbers. One witness characterized his ability to work as follows: "He always worked like a horse." Similarly it is uncontradicted and undisputed that since the accident of February 25th, 1935, the petitioner has not worked at any gainful occupation and has been rendered totally disabled. He complains that he is unable to perform any work and complains of severe pain which, at times, preceding changes in weather, necessitates his confinement to bed for two or three days and that it is necessary to insert boards in his bed to keep same rigid in order to help alleviate his pain and discomfort.

The respondent at the hearing, subsequent to the closing of the case on November 15th, 1939, produced an investigator, John Wilson, who testified that he observed for a short while the activities of the petitioner on January 6th, 1940, and that on January 8th, 1940, took moving pictures of petitioner's activities. I have had an opportunity of viewing these pictures in the presence of counsel. One phase of the pictures portrayed the petitioner walking along the sidewalk near his home carrying a small light package. Another phase of the pictures show the petitioner with a broom in his hand sweeping some snow from his sidewalk.

It must be borne in mind, that although these pictures were run off at one time, the activities of the petitioner were not continuous. Mr. Wilson testified that between these various sets of pictures, the petitioner was in his home for several hours and, of course, what he did in his home, be it resting or something else, he could not state. The activities portrayed by the pictures are of trivial consequences and in my opinion are not sufficiently extensive to erase from my mind the firm conclusion, as substantiated by the medical testimony, that the petitioner is incapable of industrial employment and is totally and permanently disabled within the meaning of the Compensation act. I have given careful consideration to this evidence offered by the respondent and can see no reason to change the opinion that I reached on November 15th, 1939. The respondent has not brought forth such evidence that would be necessary to take this petitioner

out of the category of a totally and permanently disabled man. The petitioner should not be penalized, but rather commended, for the effort that he makes to get out into the open to take a walk and otherwise keep himself busy to the utmost of his physical resources and not resign himself completely to the fact that he must remain in bed at all times. The minimum of activities engaged in by the petitioner have a therapeutic value. It is quite certain that if the petitioner could do more things, that his mind would be occupied to such an extent as to minimize his neurotic tendencies. The respondent is amply protected under the laws of our state in the event the petitioner can and does rehabilitate himself to the end that his disability is decreased.

The law in this state is well settled that it is not incumbent upon the petitioner to prove that he is absolutely helpless, in order to obtain an award for disability. *Woodrow* v. *Travelers Insurance Co.*, 121 *N. J. L.* 170; 1 *Atl. Rep.* (*2d*) 447. Total disability within the meaning of the act, does not require that the petitioner be bed-ridden or be completely unable to get about. The term "disability" is not restricted to such disabilities as impair present earning power at the particular occupation, but embraces any loss of physical function which detracts from the former efficiency of the body or its members in the ordinary pursuits of life. *Everhart* v. *New Jersey Cleaning and Dyeing Co.*, 119 *N. J. L.* 108; 194 *Atl. Rep.* 294; *Burbage* v. *Lee*, 87 *N. J. L.* 36; 93 *Atl. Rep.* 859; *Pressy* v. *DeZeng*, 86 *N. J. L.* 469; *affirmed*, 88 *N. J. L.* 382; 96 *Atl. Rep.* 1102; *Burd* v. *Richardson & Boynton*, 40 *N. J. L.* 84. Furthermore, the respondent by its own physicians and witnesses, has proven this man to be totally unfit for work. They have sought to attribute the major part of this man's disability to causes other than the accident.

Factually, it can be said, without serious dispute, that the petitioner has had an old and underlying arthritic condition which was in no way disabling up to the date of the accident. That it was not disabling is only too apparent from the undisputed testimony as to the laborious and heavy nature of the work performed by him for a number of years while

in the employ of the respondent and up to the very day of the accident. He then sustained, on February 25th, 1935, the accident above described. Immediately thereafter he was rendered unable to attend to or perform his normal or usual work and suffered and still suffers from the complaint and physical disability alluded to, which condition continues down to the present date. The only reasonable inference that can be drawn from these facts is that the accident in question is the motivating or causative factor in producing the petitioner's present disability and incapacity and I so find. In addition to the arthritic disability from which he is presently suffering, an arthritic state has unquestionably set in and this aggravates his functional disability. The man seems to be genuinely obsessed with the notion that he has a cancer of the back and since there is no evidence that he suffered from any mental fear or obsession prior to the accident, it may be reasonably inferred that the neurosis from which the petitioner is presently suffering is causally related to the accident and I so find.

I therefore conclude and find that the accident of February 25th, 1935, is chargeable with the petitioner's present condition and disability.

It is well established in this state that an employer engages a workman with all his infirmities, both physical and mental, and that upon the occurrence of an accident arising out of the course of employment the employer is responsible and liable for the ultimate effect. *Bernstein Furniture Co.* v. *Kelly,* 115 *N. J. L.* 500; 180 *Atl. Rep.* 832. While this man, prior to the accident, appeared to have been undergoing the natural changes occurring in the human system due to advancing years and some focal infection, I am compelled to the conclusion from the testimony adduced, that the accident caused an exacerbation of an underlying arthritic condition rendering the petitioner unemployable. I find that the accident is the primary cause of the petitioner's present disability. It may well be that had the petitioner been free from any underlying arthritic condition at the time of the accident, his resultant disability would not have been enough to incapacitate him from working and that by the wearing of a

proper support and appliance he could resume his employment. However, the medical testimony is almost unanimous in the conclusion that the injury superimposed on his underlying arthritis rendered the petitioner totally and permanently disabled. Our courts have repeatedly held that an injured employe is entitled to compensation for disability flowing from an injury where the injury was superimposed upon a previous non-disabling and underlying arthritis, the effect of which rendered the employe partially and totally disabled. *Kolesnik* v. *Irvington Insulator Co.,* 120 *N. J. L.* 8; 197 *Atl. Rep.* 727. The law is well settled that the claimant is entitled, not only to compensation for the disability caused directly by the accident, but also for the total disability resulting from the aggravation of his pre-existing ailments which, prior to the said accident had no disabling effects. Our courts have further held that a person who, by reason of injury, is able to perform only the very minor acts of life, and even those under distress, and who has only a theoretical earning power, is totally and permanently disabled within the meaning of the Workmen's Compensation act. Citing *Coates* v. *Warren Hotel,* 18 *N. J. Mis. R.* 122; 11 *Atl. Rep. (2d)* 436.

I therefore find and determine that as a result of the accident of February 25th, 1935, of which the respondent had due notice, the petitioner was disabled and entitled to compensation for temporary disability for a period of nineteen and three-sevenths weeks * * *. I find the permanent disability attributable to the accident is total and permanent which entitles the petitioner to receive compensation for a period of 400 weeks.

*   *   *   *   *   *   *

I find that the petitioner made a demand upon the respondent for a brace, which was refused. From the testimony it appears that this brace was necessary and I therefore order the respondent to reimburse the petitioner the sum of $9 which he expended in the purchase of this appliance.

It is, * * * ordered, that judgment final be and the same is hereby entered in favor of the petitioner and against the respondent in conformity with this order. * * *

And it is further ordered that upon the expiration of the 400-week period hereinabove set forth this petitioner shall be entitled to further benefits pursuant to the provisions of *R. S.* 34:15-12b.

HARRY S. MEDINETS,
*Deputy Commissioner.*